## THE ANSGAR.

(Circuit Court of Appeals, Third Circuit. June 16, 1903.)

### Nos. 4, 5.

1. COLLISION—STEAMSHIP AND PILOT BOAT—MANEUVERS FOR TRANSFER OF PILOT.

    While it is the rule that on the exchange of signals for a pilot between a steamship and a pilot boat it is the duty of both vessels to co-operate in maneuvers required for the transfer of the pilot without unnecessary risk, and of the steamer to stop her headway in due season and to the extent necessary to such safe transfer, a pilot boat is not justified in assuming in the night that the steamer has fully stopped at any particular point, and where acting on such assumption in turning she unnecessarily takes a course across the bows of the steamer and strikes her, she is in fault for the collision; and the steamer is not in fault because, having stopped her engines in due time, she was still under a slight headway at the time of collision.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 115 Fed. 440.

Frederick M. Brown, for appellant.

Horace L. Cheyney, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

DALLAS, Circuit Judge. A collision occurred between the steamship Ansgar and the steam pilot boat Philadelphia, near the Delaware breakwater, upon August 21, 1901, soon after 2 o'clock in the morning. Both vessels were damaged. The District Court sustained the libel which was filed on behalf of the Philadelphia, and thereupon awarded substantial damages and costs. The cross-libel on behalf of the Ansgar was dismissed. Both decrees were based upon the finding that "the Ansgar was solely at fault, her fault consisting in not stopping her way in time, so that the pilot might be put aboard with safety and convenience."

The material facts may be briefly stated. Upon the interchange of signals communicating the proposal of the Philadelphia to furnish a pilot, and the desire of the Ansgar to receive one, the two vessels proceeded towards each other for the purpose of enabling the pilot to be transferred in a small boat. The Ansgar's engines had been stopped when she was at least a quarter of a mile from the Philadelphia, but she was still slowly moving when the Philadelphia, which had then attained a position upon the starboard side of the Ansgar, and at a sufficient distance from her, undertook to approach her in a circular course, not, as we believe, with the intention of crossing the Ansgar's bow, but of placing herself alongside of and parallel to the Ansgar, and then lowering a small boat for conveyance of the pilot. This maneuver would have been a safe and proper one if it had been adhered to and pursued without deviation. But it was not. Instead of continuing to move in a half circle, the Phil-

adelphia diverged from that course to one which rendered the collision inevitable. She struck the Ansgar on her starboard bow about 12 feet abaft her stem. It is said that "the wheel of the pilot boat was steadied to enable her to get close enough to the steamship to ascertain whether the draught of the latter was such that she required a first or second class pilot," and it may be conceded that this would have been a good reason for doing what was done, if it could have been done with safety; but that it could not be was demonstrated by the result, for, as we have said, the collision was directly and inevitably caused by it. But it is nevertheless contended that the Philadelphia was not at fault, because, as is argued, "it was impossible for her master to see, in the nighttime, whether the headway of the Ansgar was actually stopped; but, supposing that the Ansgar had complied with the duty imposed in that respect, the wheel of the pilot boat was steadied as before stated." This contention assumes that it was the duty of the Ansgar to have been actually stopped when the Philadelphia supposed her to be; but, in our opinion, this assumption is unwarranted. The judgment in The City of Washington, 92 U. S. 31, 23 L. Ed. 600, does not support it. It was there said that, upon signals having been exchanged, it is proper that a pilot boat and a steamship should both proceed for the reciprocal purpose of meeting, in order that the request for a pilot may be complied with; and it is, no doubt, to be assumed that the steamer, when she bears down towards the pilot boat, will slow her speed, but that she must be stopped at any particular point at which the pilot boat may see fit to assume that she is standing still has never been decided. "Proper co-operation between the vessels necessarily implies a duty on the part of the steamer to make the necessary maneuvers to afford a lee for the yawl to reach the place where the pilot is to be received, and to stop her headway in due season, and to the extent necessary to permit the pilot boat to select a suitable place for launching her yawl, and for the yawl to come alongside and transfer the pilot without unnecessary risk." That this duty was discharged by the Ansgar seems to us to be perfectly clear, and there remained nothing for her to do but "to permit the pilot boat to select and execute her own maneuvers." The Alaska (C. C.) 33 Fed. 107–111. She did "select a suitable place," and did enter upon a maneuver which might have been successfully executed, but by departing from it she occasioned the disaster which ensued, and this departure was not justified by her unfounded supposition that the Ansgar had been stopped. Had the Philadelphia been lying, either properly or improperly, directly in the path of the Ansgar, a question calling for careful consideration of the decision in The City of Washington, supra, would have been presented, but to the very different circumstances of this case that decision has no application. The Columbia (D. C.) 27 Fed. 704; The Alaska (C. C.) 33 Fed. 107.

The decrees in these cases are reversed, and the record in each of them will be remanded to the District Court, with direction to enter a decree dismissing the libel of John P. Virdin, part owner of the steam pilot boat Philadelphia, with costs, and for further proceedings upon the cross-libel of Oscar Ellefsen, master of the Nor-

wegian steamship Ansgar, in accordance with this opinion and with the practice in admiralty.

And it is further adjudged that the costs on appeal shall be paid by the appellee.